*1302 OPINION.
Murdock :
The petitioner makes two alternative contentions in regard to the years 1924 and 1925. One, that certain interest was not income, because uncollectible; and the other, that, if the interest is to be included in gross income, then certain amounts, representing parts of debts ascertained to be recoverable only in part and charged off to that extent, should be allowed as deductions. The first contention is also made for the years 1926 and 1927, and for 1926 the alternative is that a $200,000 addition to a reserve for bad debts should be allowed as a deduction.
In support of its first contention the petitioner relies upon a principle announced by this Board, that a taxpayer, even though it accrues an item on its books as income, need not report the item for income-tax purposes, if, at the end of the year, there is no reasonable expectation of its ultimate receipt. Great Northern Railway Co., 8 B. T. A. 225; Turners Falls Power & Electric Co., 15 B. T. A. 983; Northwestern Improvement Co., 14 B. T. A. 79. See also Corn Exchange Bank v. United States, 37 Fed. (2d) 34. But, obviously, this rule has no application where the taxpayer has not only accrued, but has actually received, the item, even though advances by the taxpayer to the debtor made the receipt possible. American Cigar Co., 21 B. T. A. 464. Here, the petitioner must have received a part and may have received all of the interest items in question. The evidence is not very clear on this point, but apparently the interest items were charged against the mills in continuing accounts. Other items were also charged to these accounts; as goods were sold for the mills, the proceeds of the sales were credited to the account; and the accounts showed certain debit balances at the end of the years in controversy.- The general rule is that payments should be applied to *1303 interest rather than principal. But in any event, the evidence does not show that the interest items in controversy were uncollectible at the end of the appropriate years. The first contention does not present the proper solution of the problem.
The petitioner’s right to a deduction in any of these years depends upon whether or not the proven facts are sufficient to apply sections 234(a)(5) of the Revenue Acts of 1924 and 1926, which allow as deductions:
Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.
The Commissioner’s Regulations 64 and 69, articles 561 and 151, relating to the above provisions, require that a taxpayer must elect in 1921 or in the first year thereafter for which it files a return which method (specific debts or reserve) it will follow, and follow that method until it secures the Commissioner’s permission to change to the other. The Board has held that these requirements of the regulations are proper. Kay Manufacturing Co., 18 B. T. A. 753. The petitioner claimed no deduction for bad debts in 1921 or in 1922. But in 1923 it made its election by claiming a deduction for an addition to a reserve for bad debts. Cf. National Iron Works, 22 B. T. A. 382. So far as we have been informed it has never requested or received permission to change. Therefore, an addition to a reserve is the only method available to the petitioner. Yet, in 1924 and 1925 it claimed the right to deduct certain amounts, $55,550.73 and $100,000, respectively, representing in each case an alleged partial charge-off of a specific debt which it claims it ascertained was recoverable only in part. It does not claim, by any issue raised in the pleadings, to be entitled to deduct in these years any amount as a reasonable addition to a reserve. Only for 1926 does it claim the right to deduct a certain amount as a reasonable addition to a reserve for bad debts.
The facts in regard to the various charge-offs and reserves add to the confusion on this point as it is presented to the Board. The petitioner has had on its books since 1919 an account entitled “ Reserve for Bad Debts the-name of the account was changed at some time; additions were made as before; but never, except in 1923, was a deduction claimed on its return representing additions to this reserve. In 1924 an item of $55,550.73 was credited to this account. On December 31,1926, a new concurrent account was opened, entitled “ Special Reserve for Bad Debts and Contingencies,” with an opening credit of $100,000. On December 31, 1926, there was credited to this account the additional amount of $200,000. No addition was made in or for 1927. We have laboriously discovered the above facts *1304 from certain ledger accounts offered in evidence without any explanation. Obviously, from the present viewpoint these reserve accounts appear to have been inartificially designed.
Can we, perhaps in spite of what has been done and claimed on the part of the petitioner, give any relief by way of a deduction representing a reasonable addition to a reserve for bad debts? The evidence indicates that some additions to a reserve for bad debts would be proper, but on the question of a reasonable amount it is extremely weak. The $55,550.73 amount was used merely because that was the amount of interest due from the Langley Mills for 1924. No other justification for the use of this particular amount has been suggested. The $100,000 and $200,000 additions for 1925 and 1926 are, so far as the record discloses, merely arbitrary amounts decided upon by the officers of the petitioners. Had they been multiplied or divided by two there would be as much but no more basis in the record for their use. We do not know why these figures were selected, or why they might or might not be reasonable in amount for the purpose of the case. The two mills were losing money. The use for the products of the Langley Mills was becoming less and the petitioner was having difficulty in finding purchasers. The petitioner’s officers believed that certain assets of the mills were overvalued on the books and that the debit balances owed the petitioner would never be collected in full. The petitioner continued to make advances for various purposes, including the purchase of new machinery, but this is not so puzzling in view of the facts that the petitioner owned stock in the mills, depended upon them for products, and had already large amounts due from them. An addition must be reasonable in the light of what was known in the taxable years. Thus, the loss from the sale in 1929, unless foreseen, is not a proper measure of reasonableness. We have determined what in our opinion were reasonable additions to the reserve in the light of all of the circumstances and urged by the desirability, if not the necessity, of fixing upon some certain amounts. Despite the pleadings, these additions may be taken as deductions for the respective years.

Judgment will be entered under Rule 50.